# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                            No. 16-CR-2904-MV

BRIAN TONY,

    Defendant.

## MEMORANDUM ORDER AND OPINION

THIS MATTER comes before the Court on Defendant Brian Tony's Motion for Judgement of Acquittal. [Doc. 117]. The government timely filed a response in opposition. [Doc. 118]. For the reasons set forth below, Mr. Tony's Motion is denied.

## I. Introduction

Defendant Brian Tony was charged in a three-count Superseding Indictment with one count of First Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111, and two counts of Witness Tampering, in violation of 18 U.S.C. §§ 1512(b)(1) and (b)(3). [Doc. 56]. The Court conducted a jury trial from September 25, 2017 to September 29, 2017, and on September 30, 2017, the jury returned a verdict of guilty on all counts against Mr. Tony. [Doc. 114]. Mr. Tony orally moved for a judgement of acquittal at the close of the government's case on September 27, 2017, and the Court denied that motion. Thereafter, on October 12, 2017, Mr. Tony filed the instant Motion with respect to the First Degree Murder conviction only.

## II. Legal Standard

Upon a defendant's motion, the Court "must enter a judgement of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In deciding

whether to grant a judgement of acquittal, the Court "must view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. Brown*, 50 F. App'x 970, 976 (10th Cir. 2002). A district court is permitted "to enter a judgment of acquittal only if the evidence that defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.*

**III. Analysis**

To convict Mr. Tony of First Degree Murder under 18 U.S.C. § 1111, the government was required to prove beyond a reasonable doubt that (1) Mr. Tony caused the death of John Doe; (2) Mr. Tony killed John Doe with malice aforethought; (3) the killing was premeditated; (4) the incident occurred in Indian Country; (5) Mr. Tony is an Indian; and (6) Mr. Tony did not act in self-defense. *See* Doc. 111, Instruction No. 18. Mr. Tony concedes that the government proved beyond a reasonable doubt the first, fourth, and fifth elements of First Degree Murder. Accordingly, the Court need only address whether the second, third, and sixth elements have been satisfied.

    a. <u>Mr. Tony killed John Doe with malice aforethought.</u>

"Malice aforethought may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm." *United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987). Malice aforethought may also be established by a defendant's "callous and wanton disregard" for the life of the victim. *United States v. Joe*, 8 F.3d 1488, 1500 (10th Cir. 1993). The Tenth Circuit Pattern

Jury Instructions provide that "[t]o find malice aforethought, [the jury] need not be convinced that the defendant hated the person killed, or felt ill will toward the victim at the time." Tenth Circuit Pattern Jury Instruction 2.52. "In determining whether the killing was with malice aforethought, [the jury] may consider the use of a weapon or instrument, and the manner in which the death was caused." *Id.*

The government presented ample evidence that Mr. Tony acted with a callous and wanton disregard for John Doe's life. Specifically, the jury heard evidence that Mr. Tony stabbed John Doe approximately 23 times in the head and neck and threw a large rock at his head.

Dr. Karen Cline Parhamovich, a forensic pathologist with the office of the medical investigator, testified about her findings from her forensic examination of John Doe's body. Dr. Parhamovich testified that she found "[a]t least 23 stab or incised wounds of the head and the neck, and then . . . some blunt force injuries as well." Transcript of Trial, September 26, 2017, 191:14-18. Additionally, many of the wounds described were on the "back of the head." Transcript of Trial, September 26, 2017, 196:16. A reasonable jury could undoubtedly find that when an individual stabs another at least 23 times, they are acting with a callous and wanton disregard for the other person's life.

Brian Rohrer, the EMT who responded to the 9-1-1 call, testified at trial that he observed "[a] male individual lying face down" who was covered in what appeared to be blood. Transcript of Trial, September 26, 2017, 82:25-83:8. Mr. Rohrer testified that there was a "rock . . . with blood on it . . . adjacent to the decedent." Transcript of Trial, September 26, 2017, 82:16-122. This testimony was corroborated by the testimony of FBI Special Agent Clay Trant, who also stated that he observed "a large pool of red liquid next to [the body] and a rock." Transcript of Trial, September 27, 2017, 65:1-3. Special Agent Trant further testified that the rock was just

"five feet" from John Doe's body. Transcript of Trial, September 27, 2017, 65:5-7. The agent testified that the rock was about "thirteen inches long, nine inches wide, and about three inches thick. [He] estimate[d] that it weighed around 20, 25 pounds." Transcript of Trial, September 27, 2017, 74:1-4. Swabs of the red liquid found on the rock were analyzed, and Erica Haynes, the FBI forensic DNA examiner, testified that DNA from two male individuals was found on the rock. Ms. Haynes testified that the victim "was the source of the major contributor" and that Mr. Tony was the other source. Transcript of Trial, September 27, 2017, 91:18-92:1. The government also introduced multiple crime scene and autopsy photos that depicted, among other things, an injury to the victim's head, as well as the testimony of Dr. Parhamovich that the cause of death included both sharp and blunt force injuries. Transcript of Trial, September 27, 2017, 28:16-18. This testimony, in conjunction with the photos of the victim's head injury, supports the government's theory that Mr. Tony threw the 20 to 25 pound rock at the victim's head.

The jury heard testimony and viewed evidence that showed that Mr. Tony stabbed John Doe approximately 23 times and threw a 20 to 25 pound rock at his head. Given the nature of the injuries and the types of weapons used, the jury could reasonably conclude that this behavior constituted a callous and wanton disregard for John Doe's life and that Mr. Tony acted with malice aforethought.

  b. <u>The killing was premeditated.</u>

"A killing is 'premeditated' when it is the result of planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent." Tenth Circuit Pattern Jury Instruction 2.52. *See also United States v. Headman*, 594 F.3d

1179 (10th Cir. 2010) (relying on the Tenth Circuit Pattern Jury Instructions' definition of "premeditated.").

The jury was presented with sufficient evidence from which it could have reasonably found that on two separate occasions Mr. Tony formed the specific intent to kill. First, the jury heard evidence that Mr. Tony planned all along to kill John Doe because he was angry that John Doe had stolen tools from him. Second, even if the jury doubted that it was Mr. Tony's initial intention to kill John Doe, the jury heard evidence that after the initial altercation between Mr. Tony and John Doe, Mr. Tony waited by the vehicle for approximately 10 minutes and then followed John Doe into the arroyo to "finish it."

The jury heard evidence that Mr. Tony was angry with John Doe for stealing his "expensive tools." Transcript of Trial, September 28, 2017, 64:25. Mr. Tony arrived at John Doe's house late at night and told him to "go for a cruise" with him. Transcript of Trial, September 26, 2017, 44:10-11. Joey Mann, who was with John Doe at the time and who got in the car with John Doe and Mr. Tony, described that there was "a little tension" between Mr. Tony and John Doe, and that it seemed like Mr. Tony "hated" John Doe. Transcript of Trial, September 26, 2017, 42:13-19. Mr. Mann explained that before they all left together, Mr. Tony "grabbed [a] hammer" from the house and put it in the "back of the jeep." Transcript of Trial, September 26, 2017, 45:1-3. Mr. Mann stated that Mr. Tony's brother, Bronson ("Buck"), and girlfriend, Colleen, were in the vehicle at the time. Mr. Mann testified that they drove to Superman Canyon and stopped by a dead end. Mr. Tony got out of the car and told John Doe, "I need to talk to you." Transcript of Trial, September 26, 2017, 46:19-25. Mr. Tony and John Doe walked to the back of the vehicle, and then Mr. Mann "heard [John Doe] scream." Transcript of Trial, September 26, 2017, 47:1-2. Mr. Mann tried to get out of the car, but Bronson Tony

5

"grabbed [him] by the neck, raised his right arm, and he told [him] this is none of your business, boy." Transcript of Trial, September 26, 2017, 47:14-15. Mr. Mann testified that Bronson also said that John Doe "shouldn't have been talking shit and shouldn't have been stealing from him. It's between both of them. Let him deal with it." Transcript of Trial, September 26, 2017, 47:13-15.

John Doe eventually fled from the vehicle into a nearby arroyo. Transcript of Trial, September, 28, 2017, 88:7-9. Mr. Tony remained near the vehicle for approximately 10 minutes while John Doe called 9-1-1. The jury heard the 9-1-1 call, during which John Doe described that Mr. Tony had attacked him and told the operator that Mr. Tony was coming back. Mr. Tony gave a statement to the FBI, which was played for the jury, in which he told the agents that he heard John Doe making the phone call. Over the course of this 10 minute phone call, Mr. Tony deliberated about what to do next and ultimately followed John Doe into the arroyo to "finish it." September, 28, 2017, 88:17. While Mr. Tony claims that he merely meant that he thought they "were going to [continue] to beat the shit out of each other," Transcript of Trial, September 28, 2017, 8:1-2, a reasonable jury could have interpreted this statement to mean that Mr. Tony planned to finish his attempt to kill John Doe, especially considering that just 10 minutes prior Mr. Tony and John Doe were engaged in a fight with deadly weapons.

Mr. Mann stated that Mr. Tony eventually returned to the jeep and "once he got in the car, he goes, I got it Buck. I got it." Transcript of Trial, September 26, 2017, 49:13-15. Mr. Tony also said, "It's done." Transcript of Trial, September 26, 2017, 47:21-25. These statements further suggest that Mr. Tony had planned to kill John Doe all along and that his plan was "done."

The jury heard sufficient evidence that Mr. Tony planned to kill John Doe that day. They heard evidence that he hated John Doe, and that when he picked him up late at night, he grabbed the hammer from John Doe's house. The testimony also indicates that Bronson was aware of Mr. Tony's plan before they arrived at John Doe's house. Bronson physically restrained Mr. Mann from leaving the vehicle, and when Mr. Tony arrived back at the vehicle, he said, "I got it Buck" and "it's done." These phrases suggest that Bronson knew all along what Mr. Tony had planned.

Even if the jury believed that Mr. Tony did not *initially* plan to kill John Doe when he picked him up that evening, the jury heard sufficient evidence that Mr. Tony deliberated and formed the specific intent to kill John Doe after John Doe fled into the arroyo. Mr. Tony was outside the car while John Doe made the 9-1-1 call, specifically naming Mr. Tony to the operator. Over the course of this 10 minute phone call he deliberated about what to do next and ultimately followed John Doe into the arroyo to "finish it."

      c. <u>Mr. Tony did not act in self-defense.</u>

"A person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." *United States v. Toledo*, 739 F.3d 562, 567 (10th Cir. 2014). The Tenth Circuit Pattern Jury Instructions provide, "a person is entitled to defend himself against the *immediate* use of unlawful force. But the right to use force in such a defense is limited to using only as much force as reasonably appears to be necessary under the circumstances." Tenth Circuit Pattern Jury Instruction 1.28 (emphasis added). It is the government's burden to establish that Mr. Tony did not act in self-defense. *United States v. Corrigan*, 548 F.2d 879, 881-84 (10th Cir. 1977).

The jury was presented with sufficient evidence to reasonably find that Mr. Tony did not act in self-defense. The jury heard Mr. Tony's statement to the FBI in which he stated that he

was the initial aggressor. Mr. Tony also acknowledged on cross-examination that he lied to the FBI when, at first, he claimed that he was not the initial aggressor. Transcript of Trial, September 28, 2017, 173:3-6. Moreover, even if the jury believed that Mr. Tony did not start the altercation outside the vehicle, Mr. Tony ultimately followed John Doe down into the arroyo after John Doe fled. To claim self-defense, Mr. Tony must have reasonably believed that he was in "*imminent* danger." *Toledo*, 739 F.3d at 567 (emphasis added). The government presented evidence that Mr. Tony was not in any danger, let alone imminent danger. He was safely at his vehicle after John Doe fled. He could have gotten into the vehicle and driven away. Instead, Mr. Tony followed Doe and reinitiated the fight. Mr. Tony ultimately stabbed John Doe approximately 23 times on the head and neck, including multiple times on the back of the head. The number and location of the stab wounds supports the government's theory that Mr. Tony was the aggressor and that he was not acting in self-defense.

### IV. Conclusion

For the above reasons, the Court denies Mr. Tony's Motion for a Judgement of Acquittal. The government presented sufficient evidence that a reasonable jury could have found beyond a reasonable doubt that Mr. Tony is guilty of First Degree Murder. Specifically, the government presented evidence that (1) Mr. Tony caused the death of John Doe; (2) Mr. Tony killed John Doe with malice aforethought; (3) the killing was premeditated; (4) the incident occurred in Indian Country; (5) Mr. Tony is an Indian; and (6) Mr. Tony did not act in self-defense.

**IT IS THEREFORE ORDERED** that Defendant Brian Tony's Motion for Judgement of Acquittal is **DENIED**.

DATED this 19th day of January, 2018.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Charles E. Knoblauch | Joseph Michael Spindle |
| Catherine Begaye | Nicholas James Marshall |
| *Attorneys for Mr. Tony* | *Attorneys for the United States* |